Zhuo Ran Li (SBN: 329898)
Zhuoran2011@gmail.com
Law Offices of Li and Yang
7700 Irvine Center Dr., Ste 800,
Irvine, CA 92618
Telephone: +1 949 281 9959

Attorney for Plaintiff
PLAINTIFF SHENZHEN SHISANLANG
TECHNOLOGY CO, LTD.

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHENZHEN SHISANLANG TECHNOLOGY CO, LTD.,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>　　　　　　Defendants. | Case No.: 24-cv-3744 |

### COMPLAINT

Plaintiff Shenzhen Shisanlang Technology Co. Ltd ("Plaintiff") brings the present action against the Partnerships and Unincorporated Associations identified on Schedule "A" attached hereto (collectively, "Defendants") to enforce U.S. Design Patent No. 968,939S and alleges as follows:

### I.      JURISDICTION AND VENUE

1.  This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the U.S. Patent Act, 35 U.S.C. §§ 1, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including California, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to California residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including California, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of the federally patented design numbered 968,939S to residents of California. Each of the Defendants is committing tortious acts in California, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of California.

## II.  INTRODUCTION

3.  This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's patented design by offering for sale and/or selling unauthorized and unlicensed products of furniture socks, that are infringing and counterfeit versions of the federally patented design owned by Plaintiff, numbered 968,939S (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them

---

[1] THE E-COMMERCE STORE URLS ARE LISTED ON SCHEDULE A HERETO UNDER THE ONLINE MARKETPLACES.

and Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its federally patented design, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable design patent as a result of Defendants' actions and seeks injunctive and monetary relief.

### III.    PARTIES

**The Plaintiff**

4.   Plaintiff Shenzhen Shisanlang Technology Co. Ltd is a limited company organized under the laws of the People's Republic of China with its principal place of business in Shenzhen, China.

5.   Plaintiff sells genuine furniture sock products using its invented ornamental designs protected by the federally patented design numbered 968,939S ("Shisanlang Products"), throughout the United States. Among the purchasing public, Shisanlang products are instantly recognizable for their high quality ornamental designs.

6.   The design patent No. 968,939S ("Shisanlang Patent") has been filed by Plaintiff in the United States on August 31, 2020, and granted for a term of 15 years on November 8, 2022. It has been owned exclusively and continuously by Plaintiff, and has never been abandoned. True and correct copy of the United States Design Patent Ownership Certificate for the above-identified Shisanlang Patent is attached hereto as **<u>Exhibit 1</u>**.

7.  At all times pertinent hereto, the Shisanlang Patent is valid because the patented design invention is novel, does not consist of obvious subject matter based on prior art, is not so unclear or ambiguous that it fails to inform, with reasonable certainty people with knowledge of the subject matter involved, and Plaintiff did not omit information or provide any inaccurate information when applying for the Shisanlang Patent with the United States Patent and Trademark Office (USPTO).

8.  Plaintiff has expended substantial time, money, and other resources in researching, designing, inventing, and developing the Shisanlang Patent. As a result, Shisanlang Products using Shisanlang Patent are widely recognized and exclusively associated by consumers, the public, and the trade as being quality furniture sock products.

**The Defendants**

9.  Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at the least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax patent rights enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

10.  On information and belief, Defendants, either individual or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their

4

identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV.   DEFENDANTS' UNLAWFUL CONDUCT

11.   The high quality of Plaintiff's ornamental design for furniture sock has resulted in its significant counterfeiting. To protect its patent rights, Plaintiff has launched worldwide anti-counterfeiting program to investigate suspicious e-commerce stores identified in proactive Internet sweeps. Plaintiff, or someone working in support of Plaintiff's anti-counterfeiting program, has identified many full interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Counterfeit Products to consumer in this Judicial District and throughout the United States. E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 2**, Excerpts from Fiscal Year 2021 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Near 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Over 51% of CBP seizures originated from mainland China and Hong Kong. *Id.* Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

12.   Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office

of Strategy, Policy, and Plans (Jan. 24, 2020) attached as **<u>Exhibit 4</u>** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "significantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual storefronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186-187.

13.   Defendants have targeted sales to California residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including California, accepting payment in U.S. dollars and, on information and belief, have sold Counterfeit Products to residents of California.

14.   Defendants have neither requested nor received permission from Plaintiff to make, use, offer to sell, or sell the Counterfeit Products, or to copy Plaintiff's federally patented design.

15.   On information and belief, Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very

difficult for consumers to distinguish such stores from an authorized retailer. To the best of my knowledge, Plaintiff has not licensed or authorized Defendants to use any of the Plaintiff's design patents, and none of the Defendants are authorized retailers of genuine products of Plaintiff.

16.  On information and belief, many Defendants also deceive unknowing consumers by using the patented design of Plaintiff without authorization in the promotional images of their online stores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Plaintiff's furniture sock products. On information and belief, other e-commerce stores operating under Seller Aliases omit using Plaintiff's name in the item title to evade enforcement efforts, while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Plaintiff's furniture sock Products.

17.  On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to Internet based e-commerce platforms. On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

18.  On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for

identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that Defendants are interrelated.

19.   On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms or WeChat groups, and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

20.   On information and belief, counterfeiters such as Defendants typically operate under multiple Seller Aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore bank accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

21.   On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or

occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used and continue to infringe Plaintiff's design patent numbered 968,939S in connection with making, using, offering for sale, and selling of Counterfeit Products into the United States and California over the Internet.

22. Defendants' infringement of Plaintiff's design patent numbered 968,939S in connection with the making, using, offering for sale, and selling of Counterfeit Products, including the selling of Counterfeit Products into the United States, including California, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**COUNT I**

**INFRINGEMENT OF PATENT (35 U.S.C § 271)**

**AGAINST ALL DEFENDANTS**

23. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

24. This is a patent infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally patented ornamental designs of Plaintiff in connection with the making, using, offering for sale, and selling of infringing furniture sock goods. The Plaintiff's ornamental design for furniture sock is patented (design patent number 968,939S) and distinctive. Consumers have come to expect the highest quality from Shisanlang Products made, used, offered for sale, or sold using designs protected by the Shisanlang Patent.

25. Defendants have all actively induced infringement of the Shisanlang Patent exclusively owned by Plaintiff.

26. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the

Shisanlang Patent, and are willfully infringing and intentionally using counterfeits of the Shisanlang Patent. Defendants' willful, intentional and unauthorized use of the Shisanlang Patent is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

27.   Defendants' activities constitute willful patent infringement under Section 28 of the U.S. Patent Act, 35 U.S.C § 271, and has caused Plaintiff damages in an amount to be proven at trial, but in no case less than $300,000.00.

28.   Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and goodwill of the Shisanlang Products.

29.   The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, making, use, offering to sell, and sale of Counterfeit Products.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief against Defendants as follows:

1.   That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a)   Using the Shisanlang Patent or any reproductions of the patented design to make, use, offer for sale, or sell any product that is not a genuine Shisanlang Product;

   b)   Passing off, inducing, or enabling others to sell or pass off any product as a genuine Shisanlang Product or any other product produced by Plaintiff using the patented design, that is not Shisanlang Product;

10

c) Committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are genuine goods that did not infringe the Shisanlang Patent;

d) Further infringing the Shisanlang Patent and damaging Plaintiff's reputation and goodwill;

e) Manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory that bear the Shisanlang Patent, or any reproductions of the patented design.

2. Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, Alibaba, AliExpress, Amazon, Walmart.com, and Temu (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using Shisanlang Patent;

3. That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, together with reasonable royalties for use made of the invention by Defendants, plus interest as fixed by the Court, in an amount to be proven at trial, but in no case less than $300,000.00, and that the amount of damages for infringement of Shisanlang Patent be increased by a sum not exceeding three times the amount thereof as provided by 35 U.S. C § 284;

4. That Plaintiff be awarded its reasonable attorneys' fees and costs; and

5. Award any and all other relief that this Court deems just and proper.

/ / /

/ / /

11

Date: May 6, 2024                    Respectfully Submitted

**LAW OFFICES OF LI AND YANG**

_____
Zhuo Ran Li
*Attorney for Plaintiff SHENZHEN*
*SHISANLANG TECHNOLOGY CO, LTD.*